UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

AMANDA ELIZABETH GRAY,

    Plaintiff,

v.                                      CASE NO. 3:10-cv-858-J-34JBT

MICHAEL J. ASTRUE, Commissioner
of the Social Security Administration,

    Defendant.
_____/

## **REPORT AND RECOMMENDATION**[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her applications for a Period of Disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). A hearing was held before the assigned Administrative Law Judge ("ALJ") on March 24, 2009, at which Plaintiff was represented by an attorney. (Tr. 22-51.) At that hearing, Plaintiff amended her alleged disability onset date from January 1, 2001 to August 15, 2006. (Tr. 28, 118, 121.) The ALJ found Plaintiff not disabled by a decision dated May 26, 2009. (Tr. 14-21.)

Now appearing *pro se*, Plaintiff is appealing the Commissioner's decision that

---

[1] "Within 14 days after being served with a copy of [this Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); M.D. Fla. R. 6.02(a). "A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1).

she was not disabled from August 15, 2006 through May 26, 2009.² Plaintiff has exhausted her available administrative remedies and the case is properly before the Court. The Court has reviewed the record, the briefs, and the applicable law. For the reasons stated herein, the undersigned respectfully **RECOMMENDS** that the Commissioner's decision be **AFFIRMED**.

I. **Issues on Appeal³ and Summary of Recommendation**

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because the medical evidence presented establishes that she is disabled. (*See* Doc. 22.) Plaintiff further argues that the ALJ improperly disregarded a portion of the testimony of the Vocational Expert ("VE"), improperly considered her lack of medical treatment from a primary care physician due to her limited finances, and was prejudiced against her based on her age.⁴ (*See id.*)

The Court finds no error with regard to any of the issues raised on appeal. First, substantial evidence supports the ALJ's decision that Plaintiff was not disabled. Further, the ALJ did not err in disregarding a portion of the VE's testimony because

---

² Plaintiff had to establish disability on or before June 1, 2008 in order to be entitled to a Period of Disability and DIB. (Tr. 14.)

³ As stated earlier, Plaintiff is proceeding *pro se* in this case. Her memorandum is not in a format that clearly delineates the issues. The Court's statement of the issues gives Plaintiff the benefit of the doubt regarding the issues raised. The Commissioner has addressed all of these issues in his memorandum. (Doc. 27.)

⁴ Plaintiff was twenty-years-old on the amended onset date of August 15, 2006. (*See* Tr. 27.)

the ALJ did not have to accept the premise that Plaintiff would miss work three to five days a month due to her impairments. In addition, the ALJ's limited references to Plaintiff's lack of treatment do not constitute error. Finally, there is no evidence in the record that the ALJ was prejudiced against Plaintiff based on her age or otherwise. Therefore, affirmance is recommended.

**II.  Standard of Review**

As the Eleventh Circuit recently stated:

> We review the ALJ's decision "to determine if it is supported by substantial evidence and based on proper legal standards." "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderates against the ALJ's findings, we must affirm if the decision reached is supported by substantial evidence." In conducting this review, we may not reweigh the evidence or substitute our judgment for that of the ALJ. With respect to the ALJ's legal conclusions, however, our review is *de novo*.

*Carson v. Comm'r of Soc. Sec.*, 440 Fed. App'x 863, 864 (11th Cir. Sept. 21, 2011) (per curiam) (citations omitted).

**III.  Discussion**

    **A.  Substantial Evidence Supports the ALJ's Decision That Plaintiff Is Not Disabled**

        **1.  The ALJ's Decision**

At step two of the sequential evaluation process, the ALJ determined that Plaintiff had the severe impairments of "fibromyalgia and myofascial pain syndrome, asthma, and pseudoseizures." (Tr. 16.) After consideration of the entire record, the

3

ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform "less than light work," as follows:

> The claimant is capable of: occasionally lifting/carrying twenty pounds; frequently lifting/carrying 10 pounds; standing or walking six hours of an eight hour workday; and sitting six hours of an eight hour workday. She is restricted to occasionally climbing ramps/stairs, balancing, stooping, kneeling, crouching, and crawling. She cannot climb ladders/ropes/scaffolds and must avoid exposure to extreme heat, cold, and humidity, and hazards such as machinery, heights, etc. Additionally, the claimant should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. The claimant is also limited to routine, uncomplicated, low stress work.

(Tr. 17.)

The ALJ summarized Plaintiff's daily activities and found them "fully consistent" with the RFC. (Tr. 19.) The ALJ also summarized the relevant medical evidence of record, including Plaintiff's pain management treatment with Dennis George, M.D., the consultative examinations by Lynn Harper-Nimock, M.D., and the RFC assessments completed by Nicolas Bancks, M.D. and Eric Puestow, M.D., respectively, as well as the testimony of Plaintiff and her mother. (Tr. 18-20.)

The ALJ assigned "some weight" to Dr. Harper-Nimock's opinions because she found them "generally consistent with the claimant's allegations of fibromyalgia pain and the overall medical evidence," "great weight" to Dr. Bancks's opinions,[5] and

---

[5] The ALJ's decision provides that Plaintiff was "evaluated" by Dr. Bancks on April 11, 2007 and that Dr. Bancks completed a Physical RFC Assessment. (Tr. 18.) Although it appears that the ALJ may have mistakenly referred to Dr. Bancks as an examining physician, this misstatement does not change the conclusion that the ALJ's decision was supported by substantial evidence or that Dr. Bancks's opinions could receive "great
(continued...)

"little weight" to Dr. Puestow's opinion that Plaintiff is capable of medium exertion work "because the overall medical evidence of record supports a conclusion that the claimant is capable of performing less than light exertion work." (Tr. 18-19.)

With respect to Plaintiff's pseudoseizures, the ALJ stated:

> An electroencephalography study (EEG) performed in September of 2005 revealed that the claimant had no evidence of neurophysiologic disturbance or focal abnormalities. (Exhibit 1-F). . . . Although the record has little evidence of treatment for pseudoseizures after the alleged onset date, the claimant explained that her pseudoseizures have decreased in intensity because once she notices ringing in her ears, she calm[s] herself down to prevent them. The claimant's mother also testified that she tries to help her daughter in stressful situations to prevent seizures in order to avoid trips to the emergency room.

(Tr. 19.) The ALJ further stated that because the opinions of Saudia Major, Ph.D., who performed a psychological evaluation of Plaintiff, were "consistent with the claimant's testimony that stress triggers her pseudoseizures," she adopted an RFC assessment limiting Plaintiff "to no more than routine, uncomplicated, low stress work." (*Id.*)

Before finding that Plaintiff was capable of performing her past relevant work as a receptionist at a day care center, the ALJ stated:

> I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms. However, the claimant's statements, and those of her mother Eddie Mae Gray, concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment. The overall medical evidence of record does

---

[5](...continued)
weight."

5

not document more significant limitations than provided for in the [RFC]. There is no evidence in the record that a treating physician has advised the claimant not to work and the claimant has not been given work limitations which are more restrictive than the above [RFC].

(Tr. 19-20.)

### 2. Relevant Medical Evidence

#### a. Dr. George

Plaintiff first presented to the Institute of Pain Management, P.A. on June 15, 2004 with complaints of myofascial pain. (Tr. 252.) Dr. George examined her and assessed myofascial pain, shoulder pain, and knee pain. (Tr. 254.) Plaintiff's physical examination revealed good range of motion of all joints and of the cervical and lumbar spine. (Tr. 253-54.) She was prescribed methadone and advised to return for a follow-up in two weeks. (Tr. 254.)

Plaintiff's treatment with Dr. George for chronic myofascial pain syndrome with fibromyalgia continued for approximately two years until September 8, 2006. (Tr. 244.) During her last visit, Plaintiff was seen by Loubens Jean-Louis, P.A.-C., who noted that Plaintiff was in her third trimester of pregnancy and recommended non-opioid pain management. (Tr. 244-45.) Plaintiff was also given therapeutic exercises and was "strongly encouraged" to do them and to get adequate sleep. (Tr. 245.) Plaintiff was told to follow up on an as-needed basis. (*Id.*)

#### b. Dr. Harper-Nimock

Dr. Harper-Nimock performed two consultative, internal medicine

examinations of Plaintiff. (Tr. 267-74, 284-89.) The doctor's report from the first examination, dated March 28, 2007, provides, *inter alia*:

> Cervical spine showed decreased flexion, extension, lateral flexion bilaterally, and decreased rotary movement bilaterally. . . . Lumbar spine showed decreased flexion, extension, lateral flexion bilaterally, and decreased rotary movement bilaterally. The claimant had positive [straight leg raising] in the seated position bilaterally. The claimant had decreased [range of motion] of shoulders and elbows bilaterally. . . . The claimant had decreased [range of motion] of hips, knees, and ankles bilaterally. . . . The claimant has pain over the greater trochanter bilaterally for trigger points.

(Tr. 269.) Dr. Harper-Nimock's Medical Source Statement ("MSS") from that day provides: "The claimant has mild limitations for exposures to respiratory irritants. The claimant had mild to moderate limitations for prolonged sitting, standing, walking, climbing, and heavy lifting." (Tr. 270.)

The doctor's report from the second examination, dated October 29, 2007, provides in relevant part: "Lumbar spine showed decreased flexion, extension, lateral flexion bilaterally, and decreased rotary movement bilaterally. The claimant had positive [straight leg raising] to above 30 degrees bilaterally in the supine position, not noted in the seated position. . . . Decreased [range of motion] of hips and knees bilaterally." (Tr. 285-86.) The MSS from the second examination provides that Plaintiff "has mild to moderate limitations for prolonged sitting, standing, walking, climbing, and lifting." (Tr. 286.)

### c. Dr. Bancks

On April 11, 2007, Dr. Bancks completed a Physical RFC Assessment, in

7

which he opined that Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently; sit, stand, and/or walk for about six hours in an eight-hour workday; and occasionally climb ramps/stairs/ladders/ropes/scaffolds, balance, stoop, kneel, crouch, and crawl. (Tr. 277-78.) He further opined that Plaintiff's reaching in all directions was limited, and she should avoid concentrated exposure to fumes, odors, dusts, etc., and hazards. (Tr. 279-80.)

### d.     Dr. Puestow

On November 15, 2007, Dr. Puestow completed a Physical RFC Assessment, in which he opined that Plaintiff could lift and/or carry 50 pounds occasionally and 25 pounds frequently; she could sit, stand, and/or walk for about six hours in an eight-hour workday; and she should avoid concentrated exposure to fumes, odors, dusts, etc. (Tr. 292, 295.) Dr. Puestow noted: "Allegations exceed findings. RFC is in accord with the data." (Tr. 296.)

### e.     Dr. Major

On November 27, 2007, Dr. Major performed a consultative psychological evaluation of Plaintiff. (Tr. 299-301.) The doctor's report regarding Plaintiff's functional ability provides:

> Ms. Gray appears to be particularly vulnerable to stress, which exacerbates her medical ailments, which in turns [sic] escalates her stress experience. Generally speaking, her mental health appears within normal limits, and do [sic] not appear to limit her functional abilities. Her medical issues seem to present the most significant limits to her functional abilities. However, she may benefit from participation in outpatient counseling sessions to teach healthy stress management

8

skills.

(Tr. 301.)

### 3. Analysis

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because the medical evidence presented establishes that she is disabled. (*See* Doc. 22.) In essence, Plaintiff invites the Court to re-weigh the evidence. However, the Court does not re-weigh the evidence, make independent factual determinations, or substitute its decision for that of the ALJ. *See Lawton v. Comm'r of Soc. Sec.*, 431 Fed. App'x 830, 833 (11th Cir. June 22, 2011) (per curiam) ("While the record does contain some evidence that is contrary to the ALJ's determination, we are not permitted to reweigh the importance attributed to the medical evidence."); *Carson*, 440 Fed. App'x at 864. Thus, the question is not whether the Court would have arrived at the same decision on *de novo* review; rather, the Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). *See also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam). Based on this standard of review and for the reasons that follow, the undersigned recommends that the ALJ's decision be affirmed.

Under the substantial evidence standard, the issue is whether the record as

9

a whole, including the combined opinions of Drs. Harper-Nimock and Bancks on which the ALJ relied in assessing Plaintiff's RFC, provide "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Carson*, 440 Fed. App'x at 863. Those opinions, and the record as a whole, do provide such evidence because they are consistent with the ALJ's RFC assessment that Plaintiff is capable of performing less than light work.

With respect to Dr. Harper-Nimock, the ALJ was free to accord her opinions some weight because the ALJ found them "generally consistent with the claimant's allegations of fibromyalgia pain and the overall medical evidence." (Tr. 18.) Dr. Harper-Nimock performed two consultative examinations, and on both occasions, she imposed "mild to moderate limitations for prolonged sitting, standing, walking, climbing, and heavy lifting." (Tr. 270; *see also* Tr. 286.) The ALJ could reasonably conclude that these limitations were based on objective findings and were consistent with the other medical evidence of record.

The ALJ was also free to rely on, and give great weight to, the Physical RFC Assessment completed by Dr. Bancks. *See Milner v. Barnhart*, 275 Fed. App'x 947, 948 (11th Cir. May 2, 2008) (per curiam) ("The ALJ is required to consider the opinions of non-examining state agency medical and psychological consultants because they 'are highly qualified physicians and psychologists, who are also experts in Social Security disability evaluation.'"); *see also* SSR 96-6p (stating that the ALJ must treat the findings of State agency medical consultants as expert

10

opinion evidence of nonexamining sources). Moreover, Dr. Bancks's opinions were not only consistent with the ALJ's RFC assessment, but they were somewhat less restrictive than the RFC. (*Compare* Tr. 17 *with* Tr. 277-80.) Therefore, under the substantial evidence standard, the record as a whole adequately supports the conclusion that Plaintiff is capable of performing less than light work.[6]

### B. The ALJ Did Not Err in Disregarding a Portion of the VE's Testimony

Plaintiff also argues that the ALJ improperly disregarded the VE's testimony that a person would not be able to sustain employment if she was absent from her job for three to five days a month. (*See* Doc. 22 at 1, 3.) The relevant testimony is as follows:

> BY CLAIMANT'S ATTORNEY:
> Q      If a person is confined to the bed due to a combination of either stiffness or pain or pseudo seizures for 3-5 days a month, would that have an impact on any of these jobs?
> A      Yes. That would likely eliminate the ability to work. That would exceed the attendance requirements for most jobs.

(Tr. 49-50.)

---

[6] In her memorandum, Plaintiff alleges that she was told by one of the examining physicians that "he would like the [sic] her to be sent for more testing. Testing the [SSA] never scheduled the plaintiff for." (Doc. 22 at 2.) However, Plaintiff's allegation is not supported by any citation to the record, and the undersigned's independent review of the examining physicians' reports did not confirm Plaintiff's allegation that further testing was recommended.

Plaintiff also challenges the ALJ's decision by arguing that it incorrectly provides that she has not made an attempt to work since the date of her applications for disability benefits. (*Id.*)  This argument is incorrect.  In her decision, the ALJ specifically acknowledged Plaintiff's attempt to work at Kids by the Hour in 2008, but found this work attempt to be unsuccessful and not "substantial gainful activity." (Tr. 16.)

Plaintiff's argument appears to assume that the ALJ was required to accept her statements regarding her impairments, and particularly the assertion that she would be absent from work for three to five days a month. However, the ALJ explicitly found that Plaintiff's "statements, and those of her mother Eddie Mae Gray, concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the [ALJ's RFC] assessment." (Tr. 19.)

The Court has already determined that the ALJ's RFC assessment is supported by substantial evidence. Further, the ALJ's decision to discredit Plaintiff's statements regarding the severity of her impairments is also supported by substantial evidence. Thus, the ALJ was not required to accept the subject portion of the VE's testimony, which was based on the premise that Plaintiff would be absent from work for three to five days a month. Therefore, Plaintiff's second argument is also rejected.

### C. The ALJ's Limited References to Lack of Treatment Do Not Constitute Error

Plaintiff also argues that the ALJ improperly considered her lack of medical treatment from a primary care physician due to her limited finances. (Doc. 22 at 1.) The Court rejects this argument. The ALJ made only two limited references to lack of treatment. First, in finding that Plaintiff's migraine headaches were not a severe impairment at step two, the ALJ noted that there was no evidence that Plaintiff had

sought treatment for her migraines. (Tr. 17.) However, the ALJ also noted that Plaintiff had "not alleged limitations related to migraine headaches." (*Id.*) Moreover, even if the ALJ erred at step two by not finding that Plaintiff's migraine headaches were a severe impairment, the error is harmless because the ALJ found at least one severe impairment. *See Heatly v. Comm'r of Soc. Sec.*, 382 Fed. App'x 823, 824-25 (11th Cir. 2010) (per curiam) ("Even if the ALJ erred in not indicating whether chronic pain syndrome was a severe impairment, the error was harmless because the ALJ concluded that [plaintiff] had a severe impairment: and that finding is all that step two requires. . . . Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe.").

In addition, although the ALJ stated that "the record has little evidence of treatment for pseudoseizures after the alleged onset date," the ALJ accepted Plaintiff's explanation "that her pseudoseizures have decreased in intensity because once she notices ringing in her ears, she calm [sic] herself down to prevent them."[7] (Tr. 19.) Moreover, the ALJ adopted an RFC assessment limiting Plaintiff "to no more than routine, uncomplicated, low stress work," and accepted the opinion of Dr. Major that Plaintiff was "particularly vulnerable to stress[,] which exacerbates her medical ailments." (*Id.*) Therefore, this argument also fails.

---

[7] The ALJ may appropriately consider Plaintiff's failure to seek regular medical treatment, but must also consider any explanations therefor provided by Plaintiff or in the case record. *See* SSR 96-7p.

## D. There Is No Evidence of Prejudice against Plaintiff

Plaintiff's final argument is that the ALJ was prejudiced against her based on her age. (Doc. 22 at 1.) This argument is unfounded.

"An [ALJ] shall not conduct a hearing if he or she is prejudiced or partial with respect to any party or has any interest in the matter pending for decision." 20 C.F.R. §§ 404.940, 416.1440; *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam). If a claimant objects to the ALJ on the basis of prejudice, she must notify the ALJ at her "earliest opportunity," and if the ALJ does not withdraw from the case, the claimant "may, after the hearing, present [her] objections to the Appeals Counsel." 20 C.F.R. §§ 404.940, 416.1440. It is the claimant's burden to establish that the ALJ who decided her case was biased or had a conflict of interest requiring disqualification. *See Schweiker v. McClure*, 456 U.S. 188, 195-96 (1982).

Plaintiff has not met her burden of establishing prejudice because she has not provided any support for her conclusory allegations of prejudice, and the Court has found none in the record. Plaintiff was asked her age at the hearing; however, questions about a claimant's age or date of birth are customary and, by themselves, insufficient to establish prejudice. (*See* Tr. 27.) Furthermore, there is no indication that Plaintiff presented her objection on the basis of age bias either to the ALJ or the Appeals Council. (*See* Tr. 226-27.) Although Plaintiff is now appearing *pro se*, she was represented by an attorney at the administrative hearing, and her attorney could have voiced any concerns of prejudice, but there is no evidence that he did.

Therefore, Plaintiff's last argument also fails.

## IV. Conclusion

The Court does not make independent factual determinations, reweigh the evidence or substitute its decision for that of the ALJ. Thus, the question is not whether the Court would have arrived at the same decision on *de novo* review; rather, the Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and are supported by substantial evidence. Based on this standard of review, the Court respectfully recommends that the ALJ's decision that Plaintiff was not disabled within the meaning of the Social Security Act be affirmed.

Accordingly, it is respectfully **RECOMMENDED** that:

1. The Commissioner's decision be **AFFIRMED**.

2. The Clerk of Court be **DIRECTED** to enter judgment and close the file.

**DONE AND ENTERED** at Jacksonville, Florida, on June 4, 2012.

*/s/ Joel B. Toomey*
JOEL B. TOOMEY
United States Magistrate Judge

Copies to:

The Honorable Marcia Morales Howard
United States District Judge

Counsel of Record

*Pro Se* Party